DocuSign Envelope ID: BD6E6959-5F86-491F-94FE-76C0F661B242

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BRIAN DANLEY, Individually and On
Behalf of All Others Similarly Situated,

      Plaintiff,

      v.

OFFICE DEPOT, INC. and OFFICEMAX
NORTH AMERICA, INC.,

      Defendants.

Case No. 9:14-cv-81469-KAM

THIS CONFIDENTIAL SETTLEMENT AGREEMENT ("Agreement") is made and entered into by Brian Danley ("Named Plaintiff"), on behalf of himself and the members of the putative collective class, as defined below; Opt-In Plaintiffs Anthony McIntosh and Dean Stacey (collectively, "Opt-In Plaintiffs"); and Office Depot, Inc. and OfficeMax North America, Inc. (collectively, "OfficeMax" or "Defendants").

## RECITALS

WHEREAS, the Named Plaintiff and Opt-In Plaintiffs asserted claims against OfficeMax alleging violations under the Fair Labor Standards Act ("FLSA"), for the alleged failure to pay overtime to individuals employed by OfficeMax as exempt ImPress Managers, in the lawsuit styled Brian Danley v. Office Depot, Inc. and OfficeMax North America, Inc., Case No. 9:14-cv-81469, in the United States District Court for the Southern District of Florida (the "Lawsuit"); and

WHEREAS, as of the Agreement Date, defined below, Plaintiffs' Attorneys have represented that they have incurred attorneys' fees and costs in the investigation and prosecution of the claims alleged in the Lawsuit, and the negotiation of the settlement of the Lawsuit, a fact that OfficeMax does not contest; and

WHEREAS, the Parties desire to settle fully and finally all differences between them, including, but in no way limited to, any differences embodied in or related to the Lawsuit.

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.   <u>Definitions.</u>

      (a)   <u>Agreement Date.</u>  The Agreement Date is the date on which the last person who is required to sign the Agreement actually signs the Agreement and the Agreement is ready for submission to the Court.

(b)     <u>Allocation Amounts</u> shall mean settlement payments as calculated by the Settlement Formula.

(c)     <u>Claims Administrator.</u>   The Claims Administrator agreed upon by the Parties to administer this Settlement shall be Rust Consulting, Inc.   The Claims Administrator shall be responsible for distributing notice, making payments, handling tax reporting, and other duties assigned by OfficeMax that are consistent with this Agreement or mutually agreed to by the Parties.

(d)     <u>Court</u> shall mean the United States District Court for the Southern District of Florida in which this Lawsuit is currently being adjudicated.

(e)     <u>Days.</u>  All references to "days" shall mean calendar days, unless otherwise stated, and all time periods shall be computed in accordance with Fed. R. Civ. P. 6.

(f)     <u>Effective Date.</u>  The Effective Date of the settlement shall be: (i) 30 days after the approval of the settlement by the Court, if no appeal of or challenge to that approval has been filed; or (ii) if an appeal or challenge is filed, 30 days after the denial or dismissal of any such appeal or challenge.

(g)     <u>Eligible Workweeks</u> shall mean the total workweeks of the Putative Collective Members from June 17, 2012 through August 31, 2015, in which they held the position of exempt ImPress Manager.  However, for the Named Plaintiff and Opt-In Plaintiffs, Eligible Workweeks shall be calculated beginning on the date that is three years prior to the date on which they filed their consent to join form in the Lawsuit (November 24, 2011 as to the Named Plaintiff only; December 2, 2011 as to Opt-In Plaintiff Anthony McIntosh only; and January 9, 2012 as to Opt-In Plaintiff Dean Stacey only).

(h)     <u>Grossed-Up Allocation Amounts</u> shall mean Allocation Amounts of less than $50.00, as calculated by the Settlement Formula, which shall be grossed up to $50.00.

(i)     <u>Lawsuit</u> shall mean the Complaint styled <u>Brian Danley v. Office Depot, Inc. and OfficeMax North America, Inc.</u>, Case No. 9:14-cv-81469, in the United States District Court for the Southern District of Florida.

(j)     <u>Maximum Settlement Amount</u> shall mean the maximum gross settlement amount not to exceed $610,000.00 to resolve the claims of Named Plaintiff, Opt-In Plaintiffs and all Putative Collective Members who timely opt-in to the settlement by submitting claim forms and/or by negotiating settlement checks.   The Maximum Settlement Amount is inclusive of attorneys' fees and costs, all Administration Costs, Named Plaintiff's and Opt-In Plaintiffs' Representation Payments, and all payments to Putative Collective Members.   The Maximum Settlement Amount is exclusive of OfficeMax's share of payroll taxes as the employer or former employer.

(k)     <u>Named Plaintiff</u> shall mean Brian Danley.

(l)     <u>Opt-In Plaintiffs</u> shall mean Anthony McIntosh and Dean Stacey.

(m)     <u>Opt-In Period</u> shall mean the 60 days following the date on which the Claims Administrator mails the initial Notice of Settlement to Putative Collective Members.

(n)     <u>Participating Plaintiffs</u> shall mean all Putative Collective Members who opt into this Settlement by timely submitting a Consent to Opt-Into Settlement Form or by negotiating (e.g., signing and cashing or depositing) their settlement check, pursuant to the procedures outlined below.

(o)     <u>Parties</u> shall mean Named Plaintiff, Opt-In Plaintiffs and OfficeMax, collectively.

(p)     <u>Plaintiffs' Attorneys</u> shall mean Shavitz Law Group, P.A. and Klafter Olsen & Lesser LLP.

(q)     <u>Preliminary Weekly Payment Amount</u> shall mean the amount initially applicable to each Eligible Workweek as calculated by dividing the Net Settlement Amount, prior to accounting for any Grossed-Up Allocation Amounts, by the total number of Eligible Workweeks.

(r)     <u>Putative Collective Members</u> shall mean all current and former employees of OfficeMax who held the position of exempt ImPress Manager from June 17, 2012 through August 31, 2015.

(s)     <u>Qualified Settlement Fund or QSF</u> shall mean the account established by the Claims Administrator for the Settlement Payment Amounts paid by OfficeMax.  The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement and the Court's Orders.  Interest, if any, earned on the QSF will become part of the Maximum Settlement Amount.

(t)     <u>Releasees</u> shall mean OfficeMax North America, Inc., OfficeMax Incorporated, Office Depot, Inc., and all affiliated Parties and entities, including past and present affiliates, parents, subsidiaries, predecessors, owners, members, successors, shareholders, divisions, business areas, and each of these entities' past and present directors, officers, employees, partners, shareholders, members and representatives.

(u)     <u>Representation Payments.</u>  Subject to Court approval, a Representation Payment of $5,000.00 will be paid to the Named Plaintiff and each of the Opt-In Plaintiffs from the Maximum Settlement Amount.

(v)     <u>Settlement Payment Amounts</u> shall collectively mean the Allocation Amounts and Grossed-Up Allocation Amounts calculated under the Settlement Formula.

(w)     <u>Weekly Payment Amount</u> shall mean the amount applicable to each Eligible Workweek as calculated by dividing the Net Settlement Amount, after Grossed-

Up Allocation Amounts have been subtracted from the Net Settlement Amount, by the total number of Eligible Workweeks.

2.   Settlement Process.

(a)   Court Approval.   To effectuate the full release of claims contemplated by this Agreement, the Parties agree that on or before December 17, 2015, the Parties will seek the Court's approval of the settlement by filing a Motion for Approval of Settlement ("Approval Motion").  In connection with the Approval Motion, the Parties will submit to the Court a proposed "Approval Order."  In the Approval Motion, the Parties will request that the Court:   (1) approve this Agreement as fair and reasonable; (2) certify the collective of Putative Collective Members for settlement purposes; (3) approve Notice to be issued to the Putative Collective Members in a form similar to that attached as Exhibit 1; (4) approve Rust Consulting, Inc. as the Claims Administrator; (5) dismiss the Lawsuit with prejudice; (6) award Plaintiffs' Attorneys fees and costs; (7) award Representation Payments to Named Plaintiff and Opt-In Plaintiffs; and (8) retain jurisdiction and order the clerk to keep the case open until 15 days after the close of the 60-day Opt-In Period or the 45-day Opt-In Period for those Notices that were re-mailed (whichever is later), to file Claim Forms.  The Parties agree to work together, diligently and in good faith, to effectuate the entry of an Approval Order by the Court, including executing such further papers and/or documents, and/or participating in any hearings, as shall be necessary and/or proper to have the settlement approved and the Lawsuit dismissed with prejudice.

(b)   Certification of Collective Action for Settlement Purposes Only.   The Parties will stipulate to the certification of an FLSA collective, for settlement purposes only, consisting of the Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members.  The Parties agree that the stipulated certification of the collective action shall be for settlement purposes only, and shall not constitute or be used as evidence supporting collective or class treatment of any of OfficeMax's current or former employees in this or any other case, nor shall it be an admission by OfficeMax that any of its current or former employees are similarly situated in any way.  Should the settlement not be approved, the certification will be void *ab initio*.  The Putative Collective Members and the workweeks used for determining settlement payments will be based on OfficeMax's data provided to Plaintiffs' Attorneys on or about July 21, 2015, and used for mediation.  The total number of applicable workweeks for Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members is 8,331 workweeks.  This Agreement is contingent on OfficeMax's data provided to Plaintiffs' Attorneys on or about July 21, 2015 being accurate.[1]

(c)   Creation of Qualified Settlement Fund.   The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. §1.468B-1, 26 CFR § 1.468B-1, et seq., and will be administered by the Claims Administrator as such.  With respect to the QSF, the Claims Administrator shall:   (1)

---

[1]   "Accurate" means that the data provided by OfficeMax to the Claims Administrator is within 1% of the number of Putative Collective Members and Eligible Workweeks encompassed in the data provided by OfficeMax to Plaintiffs' Attorneys on or about July 21, 2015.

DocuSign Envelope ID: BD6E6959-5F86-491F-94FE-76C0F661B242

calculate, withhold, remit and report the Named Plaintiff's, Opt-In Plaintiffs' and Participating Plaintiffs' share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes); (2) satisfy all federal, state and local income and other tax reporting, return and filing requirements with respect to the QSF; and (3) satisfy out of the QSF all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Agreement.  The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the QSF. The Parties and the Claims Administrator shall elect to treat the Settlement Payment Amounts  as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section.  The Parties will require the Claims Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF.

(d)     Release by Named Plaintiff and Opt-In Plaintiffs.  In consideration for their Representation Payments in addition to their Settlement Payment Amounts, Named Plaintiff and Opt-In Plaintiffs, on behalf of themselves, their heirs, executors, administrators, and/or assigns, fully release Releasees of and from any and all waivable causes of action, suits, debts, complaints, claims and demands whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, which Named Plaintiff, Opt-In Plaintiffs, or their heirs, executors, administrators, and/or assigns, ever had or now has against each or any of the Releasees, from the beginning of time to the date of execution of this Agreement, including, without limitation, any and all claims relating to Named Plaintiff's and Opt-In Plaintiffs' employment with OfficeMax or any of the Releasees, terms and conditions of that employment, or the termination of that employment (if applicable), including, without limitation, claims under Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1870, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Fair Credit Reporting Act, the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act, the Florida Civil Rights Act, Florida's Whistleblower's Act, the Florida Minimum Wage Act, the Florida Constitution, any proceeding under the *qui tam* provisions of the Civil False Claims Act, 31 U.S.C. §§ 3729 et seq., whether or not the government joins the proceeding, and any other applicable federal, state, or local constitutional, statutory, or common law claims, now or hereafter recognized, including but not limited to, any claim for wages, overtime pay, severance pay, bonus pay, sick leave, holiday pay, vacation pay, life insurance, health or medical insurance or any other fringe benefit or disability, or any claims for economic loss, compensatory damages, punitive damages, liquidated damages, attorneys' fees, expenses and/or costs.  Excluded from this Agreement are any ERISA claims for vested rights in employee benefits plans, and claims that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by the EEOC.  Named Plaintiff and Opt-In Plaintiffs are waiving, however, the right to

DocuSign Envelope ID: BD6E6959-5F86-491F-94FE-76C0F661B242

any monetary recovery or relief should the EEOC or any other person or agency pursue any claims on behalf of Named Plaintiff or Opt-In Plaintiffs. Opt-In Plaintiff Anthony McIntosh agrees and represents that since the termination of his employment from OfficeMax, he has not filed any charge of discrimination with the EEOC, FCHR, or any other administrative agency based on his employment with OfficeMax, and agrees that he is forever time-barred from doing so.

(i)     Revocation by Opt-In Plaintiffs of Release of Claims Pursuant to the Age Discrimination in Employment Act. All Parties acknowledge that Opt-In Plaintiff McIntosh's and Opt-In Plaintiff Stacey's individual releases of any and all claims, as articulated in Paragraph 2(d), pursuant to the Age Discrimination in Employment Act ("ADEA Claims") will not become effective or enforceable until 7 days after the date that each signs this Agreement. Within 7 days of each Opt-In Plaintiff's signing of this Agreement, either one may revoke their release of ADEA Claims. If either Opt-In Plaintiff McIntosh or Opt-In Plaintiff Stacey should revoke their release of their ADEA Claims, that individual shall not be entitled to receive a Representation Payment and those amounts will remain part of the Net Settlement Amount. Such revocation by Opt-In Plaintiffs shall have no effect on the remainder of the Agreement, which will remain in full force and effect. If Opt-In Plaintiff McIntosh or Opt-In Plaintiff Stacey do not advise Anne Marie Estevez, Esquire, Morgan, Lewis & Bockius LLP, 200 South Biscayne Boulevard, Suite 5300, Miami, Florida 33131, in writing within such 7 day period following their execution of this Agreement of an intent to revoke, their release of ADEA Claims will become effective and enforceable upon expiration of the 7th day following each individual's execution hereof.

(e)     Release by Participating Plaintiffs. By participating in the settlement, all Participating Plaintiffs shall fully release Releasees of all federal, state and local law claims asserted in the Lawsuit and all known and unknown federal, state and local wage and hour and wage/pay-related claims – including all claims for unpaid wages, overtime, liquidated damages, penalties, and interest – that could have been asserted in the Lawsuit from the beginning of time through the date of the Court's approval of this Agreement. This release is not intended to apply to claims that do not arise from protections provided by federal or state wage and hour laws, including claims under the National Labor Relations Act or claims based on additional protections provided by any collective bargaining agreement covering Putative Collective Members. This Paragraph does not apply to any claim asserted by Participating Plaintiffs as opt-in plaintiffs or Fed. R. Civ. P. 23 putative class members in *Heitzenrater, et al. v. OfficeMax, Inc., et al.*, Case No. 1:12-cv-00900 (W.D.N.Y.).

(f)     Notice of Settlement to Putative Collective Members.

(i)     Within 5 days of the Effective Date of the settlement, OfficeMax shall provide to the Claims Administrator a list including the following information for each Putative Collective Member: name, last known address, social security number, and the workweek data needed to perform the calculations pursuant to the Settlement Formula in Paragraph 3(d) below. This information

shall be based on data/records from OfficeMax's payroll and human resources departments, and provided in a format acceptable to the Claims Administrator.

(ii)     Within 20 days of the Effective Date of the settlement, the Claims Administrator shall mail the Notice to Putative Collective Members (in the form attached as Exhibit 1) at their last known addresses (based on OfficeMax data and updated as appropriate based on the Claims Administrator undertaking address verification) informing them of their opportunity to opt into the Lawsuit settlement and claim their Settlement Payment Amount.  The Notice will be sent by First Class U.S. Mail with an enclosed postage pre-paid return envelope addressed to the Claims Administrator.  Any Notices returned undeliverable shall be traced by the Claims Administrator one time to obtain a new address or addresses and be re-mailed one time by First Class Mail. Putative Collective Members shall have 60 days from the date of the initial mailing to submit their completed Consent to Opt-Into Settlement Form (in the form attached as Exhibit 2), which must be submitted to the Claims Administrator via mail, facsimile, or e-mail on or before the 60th day (the "Opt-In Period").  In the case of U.S. Mail, the date of postmark shall be considered the date of submission.  To the extent any mailed Notice is returned as undeliverable within the 60-day Opt-In Period, such person shall be permitted 45 days from the re-mailing of the Notice to return his or her Consent to Opt-Into Settlement Form.  The Claims Administrator will also send out reminder postcards 30 days after the initial mailing of the Notice.  All costs associated with notice and the settlement administration ("Administration Costs") shall be paid out of the Maximum Settlement Amount.  Named Plaintiff and Opt-In Plaintiffs need not submit a Consent to Opt-Into Settlement Form to receive their respective Representation Payments or Settlement Payment Amounts.

(iii)     The Notice will inform Putative Collective Members of the Settlement Formula for determining Settlement Payment Amounts, and shall contain each Putative Collective Member's approximate gross estimated Settlement Payment Amount should the Putative Collective Member timely submit a Consent to Opt-Into Settlement Form.  If a Putative Collective Member disputes the Settlement Payment Amount listed in their Notice, they must produce written documentation supporting their dispute, and the dispute will be resolved by the Claims Administrator, in consultation with counsel for the Parties.  Absent written documentation demonstrating that their Settlement Payment Amount was erroneous, OfficeMax's data will be presumptively valid.

(iv)     The Notice will also inform Putative Collective Members of the claims to be released and that Putative Collective Members who submit a Consent to Opt-Into Settlement Form within 60 days (or within the subsequent 45-day Opt-In Period for those Putative Collective Members whose mailed Notice is returned as undeliverable and subsequently re-mailed) to participate in the settlement will be mailed a settlement check in the amount of their Settlement Payment Amount (Allocation Amount or Grossed-Up Allocation Amount, as applicable), less any required withholdings;

(g)     <u>OfficeMax's Option to Issue Checks to Putative Collective Members Who Do Not Submit a Consent to Opt-Into Settlement Form.</u>

(A)     At OfficeMax's Option, Putative Collective Members who do not submit a Consent to Opt-Into Settlement Form within the 60-day Opt-In Period (or within the subsequent 45-day Opt-In Period for those Putative Collective Members whose mailed Notice is returned as undeliverable and subsequently re-mailed) will be mailed a settlement check in the amount of 50% of their Settlement Payment Amount, less any required withholdings. These Putative Collective Members' settlement checks will also be accompanied by a second notice (in the form of Exhibit 3) informing them that endorsing and cashing or depositing the check will constitute: (1) consent to opt into the settlement and (2) acceptance of the settlement and a full release of claims contained in the Notice; and

(B)     Should OfficeMax exercise their Option as provided in Paragraph 2(g)(A), the remaining 50% of the Settlement Payment Amounts not paid to those who did not timely submit a Consent to Opt-Into Settlement Form will revert to OfficeMax.

(C)     OfficeMax may exercise their Option as provided in Paragraph 2(g)(A) by advising the Claims Administrator and Plaintiffs' Attorneys in writing by no later than the close of the 60-day Opt-In Period or the 45-day Opt-In Period for those Notices that were re-mailed (whichever is later)

3.     <u>Payments to Named Plaintiff, Opt-In Plaintiffs, Participating Plaintiffs, and Plaintiffs' Attorneys.</u>

(a)     <u>Maximum Settlement Amount.</u>  OfficeMax agrees to pay a maximum gross settlement amount not to exceed $610,000.00 ("Maximum Settlement Amount") to resolve the claims of Named Plaintiff, Opt-In Plaintiffs and all Putative Collective Members who timely opt-in to the settlement by submitting Consent to Opt-Into Settlement Forms and/or by negotiating settlement checks.  This Maximum Settlement Amount is inclusive of attorneys' fees and costs, all Administration Costs, Named Plaintiff's and Opt-In Plaintiffs' Representation Payments and Allocation Amounts, and all payments to Participating Plaintiffs. The Maximum Settlement Amount is exclusive of OfficeMax's share of payroll taxes as the employer or former employer.   The settlement is partially reversionary as described below.

(b)     <u>Attorneys' Fees and Costs.</u>  Subject to Court approval, Plaintiffs' Attorneys will request, and OfficeMax will not oppose, an amount equal to one third (1/3) of the Maximum Settlement Amount ($203,333.33) for attorneys' fees plus reasonable costs not to exceed $12,500.00.  All amounts allocated as attorneys' fees and costs will be paid to Plaintiffs' Attorneys and will be reported on an IRS Form 1099, and any other reporting deemed necessary.  This payment is contingent on receipt of current, valid W-9s from the

Shavitz Law Group, P.A. and Klafter Olsen & Lesser LLP. Payments made pursuant to this Paragraph shall constitute full satisfaction of any claim for fees or costs, and the Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys, on behalf of themselves and all Putative Collective Members, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory. Other than any reporting of this fee payment as required by this Agreement or law, which the Claims Administrator shall make, Plaintiffs' Attorneys shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment that they have received pursuant to this Paragraph. In the event that the Court does not approve the fee and/or cost amount requested by Plaintiffs' Attorneys, the settlement will still be effective, and this Agreement will be deemed modified to reflect the amount that is approved by the Court. All requested attorneys' fee and cost amounts not approved or awarded by the Court shall revert to the Net Settlement Amount as defined below.

(c)     <u>Representation Payments to Named Plaintiff and Opt-In Plaintiffs.</u> Subject to Court approval, the Parties agree that, in addition to the Settlement Payment Amounts that Named Plaintiff and Opt-In Plaintiffs may be entitled to receive in accordance with the Settlement Formula below, a Representation Payment of $5,000 each from the Maximum Settlement Amount to be reported on an IRS Form 1099. Any amount of the Representation Payments not approved by the Court shall revert to the Net Settlement Amount as defined below.

(d)     <u>Settlement Formula for Settlement Payment Amounts</u>. The Settlement Payment Amounts for the Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members will be determined by the Settlement Formula below:

(i)     First, Plaintiffs' Attorneys' fees (based on one third (1/3) of the Maximum Settlement Amount), costs, and all Administration Costs, and Representation Payments, will be deducted from the Maximum Settlement Amount to create the "Net Settlement Amount";

(ii)     Second, the Net Settlement Amount will be divided by the total Eligible Workweeks, and this quotient shall be the "Preliminary Weekly Payment Amount" applicable to each of the Eligible Workweeks;

(iii)     Third, the Named Plaintiff, Opt-In Plaintiffs and each Putative Collective Member will have his or her individual Eligible Workweeks multiplied by the Preliminary Weekly Payment Amount. Any individual with an amount of less than $50.00 will receive an amount grossed up to $50.00 ("Grossed-Up Allocation Amount") as their Allocation Amount. All Grossed-Up Allocation Amounts will be subtracted from the Net Settlement Amount;

(iv)     Fourth, the remainder of the Net Settlement Amount will be divided by the total Eligible Workweeks of those individuals who will not receive a Grossed-Up Allocation Amount, and this quotient shall be the "Weekly Payment Amount" applicable to each of the Eligible Workweeks;

(v)     Fifth, the Allocation Amount of the Named Plaintiff, Opt-In Plaintiffs and each Putative Collective Member who do not receive Grossed-Up Allocation Amounts will be calculated by multiplying his or her individual Eligible Workweeks by the Weekly Payment Amount.

(vi)    Sixth, Putative Collective Members who submit a Consent to Opt-Into Settlement Form within the 60-day Opt-In Period (or within the subsequent 45-day Opt-In Period for those Putative Collective Members whose mailed Notice is returned as undeliverable and subsequently re-mailed) to participate in the settlement will be mailed a settlement check in the amount of their Settlement Payment Amount, less any required withholdings, within the later of 15 days after the close of the 60-day Opt-In Period or the subsequent 45-day Opt-In Period for those Notices;

(vii)   Seventh, should Defendants exercise their Option as provided in Paragraph 2(g)(A), Putative Collective Members who do not submit a Consent to Opt-Into Settlement Form within the 60-day Opt-In Period (or within the subsequent 45-day Opt-In Period for those Putative Collective Members whose mailed Notice is returned as undeliverable and subsequently re-mailed) will be mailed a settlement check in the amount of 50% of their Settlement Payment Amount, less any required withholdings, within the later 15 days after the close of the 60-day Opt-In Period or the subsequent 45-day Opt-In Period for those Notices; and

(viii)  Eighth, should Defendants exercise their Option as provided in Paragraph 2(g)(A), the remaining 50% of the Settlement Payment Amounts not paid to those who did not timely submit a Consent to Opt-Into Settlement Form, but who were mailed a settlement check pursuant to section 3(d)(v) above will revert to OfficeMax.

(ix)    Should Defendants choose not to exercise their Option as provided in Paragraph 2(g)(A), any portion of the Net Settlement Fund not paid to Putative Collective Members will revert to OfficeMax.

(e)     Tax Treatment of Payments.  The Settlement Payment Amounts to the Named Plaintiff, Opt-In Plaintiffs and Participating Plaintiffs shall be allocated as follows: 50% shall be reported as wages on a United States Internal Revenue Service ("IRS") Form W-2 issued by the Claims Administrator (with applicable deductions and withholdings), and the remaining 50% shall constitute non-wage payments to be reported on an IRS Form 1099 issued by the Claims Admininstrator.  Form W-2s shall be issued to the Named Plaintiff, Opt-In Plaintiffs and each of the Participating Plaintiffs with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law.  The Representation Payments to Named Plaintiff and Opt-In Plaintiffs shall be reported to the IRS as non-wage income on a Form 1099 issued by the Claims Administrator.  The payments provided in Paragraph 3(b) of this Agreement shall be considered attorneys' fees and costs and reported on behalf of Plaintiffs' Attorneys to the IRS on a Form 1099 issued to Plaintiffs' Attorneys

DocuSign Envelope ID: BD6E6959-5E86-4915-94EF-76C0F661B242

with the taxpayer identification number(s) of Plaintiffs' Attorneys. In the event that it is subsequently determined by the IRS or any other applicable taxing authority that the Named Plaintiff, Opt-In Plaintiffs or any Participating Plaintiff owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between the Named Plaintiff, Opt-In Plaintiffs and Participating Plaintiff(s) and the taxing authority, and that OfficeMax will not be responsible for the payment of such taxes, including any interest and penalties.

(f)     No Effect on Benefits Calculations.   In no event shall any payment to Named Plaintiff, Opt-In Plaintiffs or any Participating Plaintiff create any credit or otherwise affect the calculation of any compensation, deferred compensation, or benefit under any compensation, deferred compensation, pension, or other benefit plan, nor shall any such payment be considered as "compensation" under any pension, retirement, profit sharing, incentive, or deferred compensation plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment benefit plan or program.

(g)     Funding the Settlement Fund and Timing of Payments.

(i)     Within 10 days after the Effective Date of the settlement, OfficeMax shall deposit into the Claims Administrator's QSF account the amounts awarded by the Court to Plaintiffs' Attorneys for attorneys' fees and costs, the Court-approved Administration Costs, and the Court-approved amount of Named Plaintiff's and Opt-In Plaintiffs' Representation Payments. Payments to Plaintiffs' Attorneys for the Court-approved attorneys' fees and costs, as well as the Representation Payments to Named Plaintiff and each of the Opt-In Plaintiffs, shall be made within 10 days after the funding described in this Paragraph.

(ii)     Within 10 days after the end of the 60-day Opt-In Period or the 45-day Opt-In Period for those Notices that were re-mailed (whichever is later), OfficeMax shall deposit into the Claims Administrator's QSF account the portion of the Maximum Settlement Amount needed to pay the Settlement Payment Amounts to Named Plaintiff, Opt-In Plaintiffs, Participating Plaintiffs and Putative Collective Members receiving settlement checks pursuant to Paragraph 2(g)(A), and OfficeMax's share of the payroll taxes on the wage portions of the Settlement Payment Amounts.

(iii)     OfficeMax shall cooperate with the Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Paragraph 3(e) and shall promptly pay such amounts to the QSF within the time limit described in Paragraph 3(g)(ii). The Claims Administrator shall be responsible for calculating, reporting, and/or paying to the IRS or any state or local taxing authority all amounts owed for both the employer's share and employees' shares of all federal, state or local taxes, and withholdings with respect to all amounts payable to

Named Plaintiff, Opt-In Plaintiffs and Participating Plaintiffs, as required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Defendants as required by applicable law.

       (iv)    Checks for the Settlement Payment Amounts to Named Plaintiff, Opt-In Plaintiffs, Participating Plaintiffs and Putative Collective Members receiving settlement checks pursuant to Paragraph 2(g)(A), shall be mailed within a reasonable time not to exceed 15 days after the close of the 60-day Opt-In Period or the 45-day Opt-In Period for those Notices that were re-mailed (whichever is later).

       (h)    <u>Checks Issued.</u>  All checks issued pursuant to this Agreement shall be valid and negotiable for a period of 90 days from issuance.  Any checks issued pursuant to this Agreement that are not cashed or deposited within 90 days from issuance shall become void, the amounts shall revert to OfficeMax, any applicable taxes reported and/or paid on such amounts shall be corrected with the applicable taxing authorities and requested for remittance, and the applicable Named Plaintiff, Opt-In Plaintiffs, Plaintiffs' Attorneys, or Putative Collective Members shall not be entitled to another check or any other monetary payments as a result of the settlement.  The Named Plaintiff, Opt-In Plaintiffs and Participating Plaintiffs who timely submitted a Consent to Opt-Into Settlement Form shall, however, remain bound by this Agreement, their releases, the applicable Dismissal, and/or their Consents to Opt-Into Settlement notwithstanding any failure to cash or deposit any check issued pursuant to this Paragraph within 90 days from issuance.  The Parties may, however, agree to instruct the Claims Administrator to issue reminder postcards 30 days after settlement checks are issued to remind Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members to negotiate their settlement checks.

4.    <u>General Provisions Regarding the Settlement Process.</u>

       (a)    Named Plaintiff and Plaintiffs' Attorneys shall not be entitled to the data provided by OfficeMax to the Claims Administrator or otherwise collected by the Settlement Administrator for purposes of administering the settlement, including, but not limited to, any list of the Putative Collective Members' names or contact information, except Plaintiffs' Attorneys shall be entitled to the names and contact information (including home address, telephone numbers and e-mail addresses) of Participating Plaintiffs.

       (b)    If a Putative Collective Member (other than Named Plaintiff and Opt-In Plaintiffs) contacts Plaintiffs' Attorneys, Plaintiffs' Attorneys are permitted to discuss the terms of the settlement with such Putative Collective Member only as it relates to his or her own circumstances such as the general Settlement Formula, the Putative Collective Member's individual anticipated Settlement Payment Amount, and any other issue that relates to his or her own individual issues.  The Parties agree that Named Plaintiff, Opt-In Plaintiffs, Plaintiffs' Attorneys, and OfficeMax management shall not discourage the Putative Collective Member from participating in the settlement.

DocuSign Envelope ID: BD6E6959-5E86-4915-94EF-76C0F661B242

(c)     OfficeMax may, in its sole discretion, choose to accept as timely submitted any Consent to Opt-Into Settlement Form received from a Putative Collective Member within 30 days after the end of the 60-day Opt-In Period (or the 45-day Opt-In Period for those Putative Collective Members who are re-mailed a Notice), in which case such Putative Collective Member will be deemed to have timely submitted the Consent to Opt-Into Settlement Form for purposes of this Agreement.   Absent OfficeMax's consent, however, any Putative Collective Member who fails to return the executed Consent to Opt-Into Settlement Form postmarked by the end of the 60-day Opt-In Period (or subsequent 45-Day Opt-In Period for those whose Notice was re-mailed) will not be eligible to participate in the settlement or receive their Settlement Payment Amount.

(d)     Should any individual who was not initially identified as a Putative Collective Member contact OfficeMax or otherwise come to OfficeMax's attention prior to the end of the 60-day Opt-In Period, OfficeMax shall, in its sole discretion, make a determination as to whether to include such individual in the settlement.  If the inclusion of any such individual will cause the total workweeks to exceed 8,331 (as contemplated in Paragraph 2(b) above), the individual may be paid from any part of the Maximum Settlement Amount that reverts to Defendants.  If OfficeMax determines that any such individual should be included in the settlement, OfficeMax will notify Plaintiffs' Attorneys and the Claims Administrator who will send that individual the Notice described in Paragraph 2(f) providing said individual a 45-day Opt-In Period.

(e)     If any party or Claims Administrator identifies any such issue or dispute relating to or arising from this Agreement, the settlement administration, or claim/opt-in process, that party or Claims Administrator agrees to inform the other Parties and Claims Administrator on a timely basis.  Excluding disputes raised pursuant to Paragraphs 4(d) and 2(f)(iii), to the extent that the issue or dispute can be resolved by the data that the Claims Administrator already has or by the submission of additional records by OfficeMax or the Named Plaintiff, Opt-In Plaintiffs or Putative Collective Members who raised the issue or dispute, the Claims Administrator will in the first instance attempt to resolve the issue or dispute and may consider any additional records produced by OfficeMax or the Named Plaintiff, Opt-In Plaintiffs or Putative Collective Members who raised the issue or dispute.  If the Claims Administrator is unable to resolve the issue or dispute, the Parties agree to cooperate in good faith to agree upon the resolution of any issue or dispute relating to or arising from this Agreement, the settlement administration, or claim/opt-in process.  Any payments that OfficeMax agrees to make resulting from the resolution of any issue or dispute may be administered through the Claims Administrator or paid directly by OfficeMax, in its sole discretion, and may be paid from any part of the Maximum Settlement Amount reverting to OfficeMax as a result of this Agreement.

5.     <u>Non-Admission of Liability.</u>  This Agreement shall not in any way be construed as an admission by OfficeMax that it has acted wrongfully with respect to Named Plaintiff, Opt-In Plaintiffs or any Putative Collective Members collectively or individually or to any other person, or that those individuals have any rights whatsoever against OfficeMax, and OfficeMax specifically disclaims any liability to or wrongful acts against Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members, or any other person, on the part of Releasees.  Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Lawsuit

or any other matters released in this Agreement. Nor is this Agreement based on the merits of the Lawsuit. Accordingly, the Parties agree that no party has prevailed on the merits and that this Agreement shall not serve or be construed as evidence that any party has so prevailed.

6. <u>Non-Admission of Collective or Class Liability.</u> The Parties agree that this Agreement does not constitute, shall not be construed to be, and shall not be cited in or be admissible in any proceeding as evidence of: (a) a determination or admission that any group of similarly situated employees exists to maintain a collective action under the FLSA or a class action under Rule 23 of the Federal Rules of Civil Procedure (or comparable state laws or rules); (b) an adjudication of the merits of the Lawsuit; or (c) an adjudication of any other matters released in this Agreement. Accordingly, the Parties agree that no party has prevailed and that this Agreement shall not serve or be construed to be, nor cited in nor be admissible in any proceeding as, evidence that any party has so prevailed or that OfficeMax or the Releasees have engaged in any wrongdoing.

7. <u>Release of Fees and Costs for Settled Matters.</u> Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys further understand and agree that any payments made under Paragraph 3(b) of this Agreement will be the full, final, and complete payment of all attorneys' fees and costs and any other payments arising from or relating to the representation of Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Lawsuit or any related action or advice provided. As an inducement for OfficeMax to enter into this Agreement, and as a material condition thereof, once provided with payments under this Agreement (whether checks are cashed or not), Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys irrevocably and unconditionally release, acquit, and forever discharge, any claim they may have against OfficeMax or the Releasees for attorneys' fees or costs or other payments or remuneration associated with the representation of Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members in connection with the Lawsuit and this settlement. As a further inducement to OfficeMax to enter into this Agreement, and a material condition thereof, Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys further understand and agree that the fee and cost payments made pursuant to Paragraph 3(a) of this Agreement will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted, or discharged under this Paragraph. Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys agree to defend, indemnify, and hold harmless OfficeMax from any and all demands or claims for additional attorneys' fees and costs arising from or relating to Plaintiffs' Attorneys' representation of Named Plaintiff, Opt-In Plaintiffs and Putative Collective Members or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Lawsuit.

8. <u>Non-Disclosure.</u> The Parties and their counsel agree that they shall not provide information to the press, there will be no press release, press conference or other publicity initiated or facilitated by the Parties or their counsel disclosing anything regarding the terms of this Agreement. The Parties and their counsel further agree that they shall not otherwise post, disclose or publicize (or cause to be posted, disclosed, or publicized) anything regarding the fact or existence of this Agreement except information included in relevant submissions to the Court to obtain approval as required. If the Parties or their counsel are contacted by the media, they shall limit any comments to the statement, "The matter has been resolved. Please review the public filings for additional information."

Nothing in this Agreement shall prohibit Named Plaintiff, Opt-In Plaintiffs or Plaintiffs' Attorneys from disclosing the amounts paid to them under this Agreement to (1) members of their immediate family, their attorneys, and their accountant or tax advisors, provided that each such person has been informed of this non-disclosure obligation and has agreed to be bound by its terms, or (2) to the Internal Revenue Service or state or local taxing authorities. Nothing in this Agreement shall prohibit Named Plaintiff, Opt-In Plaintiffs or Plaintiffs' Attorneys from disclosing information to Putative Collective Members as allowed by Paragraph 4(b), or that is expressly required or protected by law, or in any action to enforce the terms of this Agreement, provided that such disclosure is protected from public disclosure by an appropriate confidentiality order to the extent permitted by applicable authority.

If Named Plaintiff, Opt-In Plaintiffs or Plaintiffs' Attorneys receive a court order or subpoena that may require the disclosure of information protected by this Paragraph, Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys agree to provide immediate notice in writing (e-mail notification shall be an acceptable writing) of such order or subpoena to counsel for OfficeMax at the address below and to assist OfficeMax in responding to the subpoena or seeking an appropriate protective order. At that time, Named Plaintiff, Opt-In Plaintiffs or Plaintiffs' Attorneys will provide notice to OfficeMax's counsel as follows:

> Anne Marie Estevez, Esq.
> Morgan, Lewis & Bockius LLP
> 200 S. Biscayne Blvd, Suite 5300
> Miami, FL 33131
> E-mail: aestevez@morganlewis.com

9.   **Non-Disparagement.**   Named Plaintiff and Opt-In Plaintiffs agree not to communicate to any third party about Releasees in any disparaging or defamatory manner, including but not limited to any communications made verbally, in writing, or via social media websites (e.g., Facebook, Craigslist, etc.). Named Plaintiff and Opt-In Plaintiffs agree to refer all requests for employment references or other information concerning their employment to The Work Number at (800) 367-5690 (Employer Code: 10258), which provides neutral references, e.g., dates of employment and job title.

10.   **No Re-Hire.**   Opt-In Plaintiff Anthony McIntosh recognizes and agrees that his employment relationship with OfficeMax or any Releasees has been permanently and irrevocably severed. Accordingly, Opt-In Plaintiff Anthony McIntosh agrees that he will not seek and hereby waives any claim for employment, reinstatement, re-employment, assignment or otherwise (as a full-time or part-time employee, temporary worker, independent contractor or consultant or any other position in which he receives payment either directly or indirectly from any Releasee) with OfficeMax or any of its affiliated companies or any merged or acquired entity or entities, at any time in the future, and that, if offered such employment, re-employment, assignment or work, he will decline such offers, and that this Agreement shall be a complete bar to any such application for employment or re-employment; provided, however, that the terms and application of this Paragraph may be waived in writing by a duly authorized representative of OfficeMax, or, as applicable, its affiliates or subsidiaries, in its or their sole discretion, which writing makes specific reference to this Agreement. This Paragraph is not applicable to Named Plaintiff or Opt-In Plaintiff Dean Stacey as they are currently employed by OfficeMax.

11.    <u>Non-Solicitation of Claims.</u>   Named Plaintiff and Opt-In Plaintiffs agree not to participate in, encourage, assist or facilitate the bringing or maintenance of any kind of cause of action, claim, report, or any administrative complaint on the federal, state, or local level by any former or present OfficeMax employees against OfficeMax based on any matter being released pursuant to Paragraph 2(d) of this Agreement, except for any activities that cannot be precluded by court-approved agreement under applicable law.   Plaintiffs' Attorneys agree not to use any information relating to the Lawsuit obtained prior to and/or during the Lawsuit, or the settlement thereof, to solicit or encourage, whether directly or indirectly, any other Parties or attorneys to commence a claim or proceeding against OfficeMax, or for any other purpose whatsoever except in conjunction with finalizing the settlement of the Lawsuit.

12.    <u>Effect of Non-Approval.</u>   In the event the Court does not approve a term of this Agreement, the Parties will confer about appropriate revisions to this Agreement (if that is possible and agreed upon) and submit a revised Agreement to the Court for its approval.   Under no circumstances, however, will the Maximum Settlement Amount set forth in Paragraph 3(a) increase, nor will either party be required to change any term it deems in its sole discretion material.

13.    <u>Governing Law and Forum Selection.</u>   This Agreement is made and entered into in the State of Florida and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Florida.   Any legal action relating to this Agreement shall be brought in a court of competent jurisdiction in Florida.   Should any party to this Agreement institute any legal action against another party with respect to any dispute relating to this Agreement in a forum other than a court of competent jurisdiction in Florida, the responding party shall be entitled to recover from the initiating party all damages, costs, expenses, and attorneys' fees incurred as a result of such action.

14.    <u>Assignments.</u>   Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys represent that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

15.    <u>No Representations.</u>   Named Plaintiff, Opt-In Plaintiffs and Plaintiffs' Attorneys represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by OfficeMax or by any of OfficeMax's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement other than the representations reflected in this Agreement.

16.    <u>Binding Agreement.</u>   This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of OfficeMax and the Releasees.

17.    <u>Severability.</u>   Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement

DocuSign Envelope ID: BD6E6959-5E86-491F-94EF-76C0F661B242

directly involved, and the remainder of the Agreement shall remain in full force and effect. However, if the releases given by Named Plaintiff or Opt-In Plaintiffs are deemed illegal, invalid, or unenforceable, Named Plaintiff or Opt-In Plaintiffs, as applicable, agree to execute a substantially similar release that is not illegal, invalid, or unenforceable.

18.     No Waiver.  The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such party's right thereafter to enforce each and every term and condition of this Agreement.

19.     Construction.  Each party and counsel for each party has reviewed this Agreement prior to signing the Agreement.  Therefore, the normal rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the writing shall not apply to any action on this Agreement.

20.     Sole and Entire Agreement.  This Agreement sets forth the entire agreement between the Parties hereto.  This Agreements fully supersedes and replaces any and all prior oral or written agreements or understandings between the Parties hereto pertaining to the subject matter hereof, including any Settlement Term Sheet or Memorandum of Understanding ("MOU") between the Parties, which shall become null as of the date of full execution of this Agreement. This Agreement may only be modified in writing.

21.     Counterparts.  This Agreement may be executed in two or more counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

22.     Other Papers.  The Parties will execute such further papers or documents as shall be necessary or proper in order to fulfill the terms and conditions of this Agreement.

23.     Facsimile and Electronic Signatures.  Any party may execute this Agreement by transmitting its signature page via facsimile, e-mail, or other electronic means to counsel for the other party.  Any signature made and transmitted by facsimile, e-mail, or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

24.     Cooperation Clause.  Named Plaintiff, Opt-In Plaintiffs, Plaintiffs' Attorneys, OfficeMax's attorneys and OfficeMax agree to cooperate to effectuate the settlement of the Lawsuit, including securing the Court's approval of the settlement, assisting with the administration of the settlement in accordance with the terms of this Agreement, and obtaining a dismissal with prejudice.

Dated: 12/16/2015_____, 2015

DocuSigned by:

*Brian Danley*

BRIAN DANLEY

Dated: __12/16/2015__, 2015

DocuSigned by:

_Anthony McIntosh_
ANTHONY MCINTOSH


Dated: __12/16/2015__, 2015

DocuSigned by:

DEAN STACEY


Dated: _____, 2015


_____
Shavitz Law Group, P.A.

Dated: _____, 2015


_____
Klafter Olsen & Lesser LLP


Dated: _____, 2015

On behalf of Defendants




_____

Dated: _____, 2015


_____
ANTHONY MCINTOSH                                    Dated: _____, 2015

                                                    On behalf of OfficeMax North America,
Dated: _____, 2015                         Inc.:


_____
DEAN STACEY                                         _____


Dated: 12/17_____, 2015


_____
Shavitz Law Group, P.A.

Dated:  December 16, 2015


_____
Klafter Olsen & Lesser LLP


18

Dated: _____, 2015

_____
ANTHONY MCINTOSH

Dated: _____, 2015

_____
DEAN STACEY

Dated: _____, 2015

_____
Shavitz Law Group, P.A.

Dated: _____, 2015

_____
Klafter Olsen & Lesser LLP

Dated: 12 / 17 , 2015

On behalf of Defendants

_____

18

EXHIBIT 1
NOTICE TO PUTATIVE COLLECTIVE CLASS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BRIAN DANLEY, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

OFFICE DEPOT, INC. and OFFICEMAX
NORTH AMERICA, INC.,

        Defendant.

Case No. 9:14-cv-81469-KAM

**NOTICE TO PUTATIVE COLLECTIVE MEMBERS REGARDING SETTLEMENT OF**
**FLSA COLLECTIVE ACTION**

**PUTATIVE COLLECTIVE MEMBERS ARE HEREBY NOTIFIED AS FOLLOWS:**

A settlement has been reached in the above-referenced collective action lawsuit styled Brian Danley v. Office Depot, Inc. and OfficeMax North America, Inc., pending in the United States District Court for the Southern District of Florida (the "Lawsuit"). It is important that you read this Notice carefully.

**A.**    **PURPOSE OF THIS NOTICE**

The purpose of this Notice is to inform you that you are eligible to claim a portion of the collective action settlement reached in the Lawsuit (the "Settlement") in the approximate amount of $_____, less applicable withholdings.

The Court has certified, for settlement purposes only, a Fair Labor Standards Act ("FLSA") collective action consisting of the following Putative Collective Members:

> All current and former employees of Office Depot, Inc. and
> OfficeMax North America, Inc. (collectively, "OfficeMax") who
> held the position of *exempt* ImPress Manager from June 17, 2012
> through August 31, 2015.

According to OfficeMax's records, you are a Putative Collective Member. Therefore, this Notice is to inform you about the Settlement and to explain your rights and options with respect to the Lawsuit and how to claim your payment under the Settlement. OfficeMax encourages you to claim your settlement amount and assures that you will not be retaliated against in any way for claiming your settlement amount.

B.      **DESCRIPTION OF THE ACTION**

On November 24, 2014, Plaintiff Brian Danley (the "Named Plaintiff") commenced a proposed collective action against OfficeMax in the in the United States District Court for the Southern District of Florida, styled <u>Brian Danley v. Office Depot, Inc. and OfficeMax North America, Inc.</u>, alleging that OfficeMax violated the FLSA.

The Lawsuit alleges that OfficeMax violated federal wage law by failing to pay Plaintiffs and other *exempt* ImPress Managers overtime premium compensation (or "time and one-half pay") for hours worked over 40 in a workweek.  The Lawsuit seeks to recover unpaid overtime wages in addition to liquidated damages, attorney's fees, and litigation expenses.  OfficeMax denies the Named Plaintiff's allegations and maintains that it properly compensated the Putative Collective Members and that OfficeMax complied with all applicable state and federal laws with respect to the payment of overtime.

The parties in this action disagree as to the probable outcome of the action with respect to liability and damages if it were not settled.  The Named Plaintiff recognizes that litigating is a risky proposition, and that he may not have prevailed on his claim.  Likewise, while OfficeMax is confident that they have strong defenses to the Named Plaintiff's claim, it recognizes the risks, distractions, and costs involved with litigation.

On ███████████, the Court granted approval of the Settlement.  This Settlement is the result of good-faith, arm's-length negotiations between the parties, through their respective attorneys.  Both sides agree that in light of the risks and expense associated with continued litigation, this Settlement is fair and appropriate under the circumstances, and in the best interest of the Putative Collective Members.  The Court did not rule on the merits of the Named Plaintiff's claims or OfficeMax's defenses.

The attorneys for the Named Plaintiff and the Putative Collective Members ("Plaintiffs' Attorneys") are:

| | |
|---|---|
| Gregg I. Shavitz | Seth R. Lesser |
| Susan H. Stern | Fran L. Rudich |
| Paolo C. Meireles | Jason Conway |
| Shavitz Law Group, P.A. | Klafter, Olsen & Lesser, LLP |
| 1515 South Federal Highway, Suite 404 | Two International Drive, Suite 350 |
| Boca Raton, FL  33432 | Rye Brook, NY  10573 |
| Phone:  (561) 447-8888 | Telephone:  (914) 934-9200 |
| Facsimile: (561) 447-8831 | Facsimile:  (914) 934-9220 |
| gshavitz@shavitzlaw.com; | *seth@klafterolsen.com* |
| sstern@shavitzlaw.com; | *fran@klafterolsen.com* |
| pmeireles@shavitzlaw.com | *jason.conway@klafterolsen.com* |

The attorneys for OfficeMax are:

Anne Marie Estevez
Sharon A. Lisitzky
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
Telephone:  (305) 415-3330
Facsimile:  (877) 432-9652
*aestevez@morganlewis*.com
*slisitzky@morganlewis*.com

## C.    SUMMARY OF TERMS OF THE SETTLEMENT

1.    The terms of the settlement provide for OfficeMax to pay up to a Maximum Settlement Amount of $610,000.00 to resolve the claims of Named Plaintiff and all Putative Collective Members who opt-in to the settlement by timely submitting claim forms and/or by negotiating settlement checks.  Each Putative Collective Member is eligible to receive a share of the Maximum Settlement Amount.   Shares will be calculated after deducting Plaintiffs' Attorneys' fees and costs, administration costs, and Named Plaintiff's and two "Opt-In Plaintiffs'" Representation Payments (the "Net Settlement Amount").   Each Putative Collective Member's share will be a per work week amount multiplied by the number of weeks that the Putative Collective Member worked during the relevant period, subject to potential adjustment, as explained below.  Your estimated share of the settlement is set forth above in Section A.  The settlement payments will be made as follows:

    i.    To Putative Collective Members who timely return a completed Consent to Opt-Into Settlement Form, Settlement Payment in the amount of the greater of: (a) $50.00; or (b) a share of the Net Settlement Amount, pursuant to a formula based on weeks worked as *exempt* ImPress Managers between June 17, 2012 through August 31, 2015 ("Eligible Workweeks").  Any portion of the Net Settlement Amount not claimed by Putative Collective Members will revert to OfficeMax, subject to the following paragraph.

    ii.    With respect to Putative Collective Members who do not timely return a completed Consent to Opt-Into Settlement Form, OfficeMax may decide, at its discretion, to issue a Settlement Payment in the amount of 50% of the greater of: (a) $50.00; or (b) their share of the Net Settlement Amount, pursuant to a formula based on their Eligible Workweeks.  Half of the remaining 50% will revert to OfficeMax.

    iii.    Checks that are not cashed or deposited within 90 days from issuance will revert to OfficeMax.

    iv.    To Plaintiffs' Attorneys, up to one third (1/3) of the Maximum Settlement Amount for attorneys' fees, including those fees in connection with securing

this Settlement, the claims process, and implementing the Settlement Agreement;

v.     To Plaintiffs' Attorneys, reimbursement of their court-approved costs and expenses;

vi.    To the Claims Administrator, expenses incurred in administering the settlement, including but not limited to, providing notice to the settlement class, disbursing settlement proceeds, processing claims, tax reporting, and establishing a Qualified Settlement Fund; and

vii.   To Named Plaintiff and two Opt-In Plaintiffs, Representation Payments in recognition of their efforts for the benefit of themselves and other Putative Collective Members, which included preparation for the mediation as well as investigation of the claims, and their workweek payments.

2.     Each Putative Collective Member who participates in the Settlement (either by timely submitting a Consent to Opt-Into Settlement Form or by negotiating (i.e., signing and cashing or depositing) their settlement check, agrees to fully release OfficeMax North America, Inc., Office Depot, Inc., and all affiliated parties and entities (including past and present affiliates, parents, subsidiaries, predecessors, owners, members, successors, shareholders, divisions, business areas, and each of these entities' past and present directors, officers, employees, partners, shareholders, members and representatives) (collectively "Releasees") of all federal, state and local law claims asserted in the Lawsuit and all known and unknown federal, state and local wage and hour and wage/pay-related claims – including all claims for unpaid wages, overtime, liquidated damages, penalties, and interest – that could have been asserted in the Lawsuit from the beginning of time through the ████████████ This release is not intended to apply to claims that do not arise from protections provided by federal or state wage and hour laws, including claims under the National Labor Relations Act or claims based on additional protections provided by any collective bargaining agreement covering Putative Collective Members.  This release does not apply to any claim asserted by Putative Collective Members as opt-in plaintiffs or Fed. R. Civ. P. Rule 23 putative class members in *Heitzenrater, et al. v. OfficeMax, Inc., et al.*, Case No. 1:12-cv-00900 (W.D.N.Y.).

**D.     TO CLAIM YOUR PAYMENT AND PARTICIPATE IN THE SETTLEMENT**

You are encouraged to claim your payment.  To claim your payment and participate in the Settlement, please complete, sign, and return the enclosed Consent to Opt-Into Settlement Form in the enclosed postage-paid envelope, by fax, or by email, to the Claims Administrator at the address listed below:

████████████
Claims Administration (OfficeMax—ImPress Manager FLSA Litigation)
Address: ██████████████████████
Telephone: ██████████████████████
Fax: ████████████████
Email: ██████████████████████

To be effective, the Consent to Opt-Into Settlement Form must be completed in full and signed.  The Consent To Opt-Into Settlement Form must be received by the Claims Administrator by mail, fax, or email on or before ▮▮▮▮▮▮▮▮▮▮▮.  In the case of U.S. Mail, the date of postmark shall be considered the date of submission.  Late or incomplete Claim Forms may not be honored.

You will have 90 days from issuance of your settlement check to cash it before it is permanently voided.  If you do not negotiate your settlement check within 90 days, you will not receive any money under the settlement, however, you will still be bound by the release of claims described in Section C.2 above.

**E.   IF YOU DO NOT SUBMIT A CONSENT TO OPT-IN SETTLEMENT FORM**

If you do not timely submit a completed Consent to Opt-Into Settlement Form, you may still be mailed a settlement check calculated as described in Section C.1.ii above.  If so, you may claim your payment and participate in the Settlement by signing and depositing or cashing (i.e., negotiating) the settlement check.  By negotiating the settlement check, you consent to opt-into the Settlement and to be bound by the terms of the Settlement, including the release described in Section C.2 above.  You will have 90 days from issuance of your settlement check to cash it before it is permanently voided.  If you do not negotiate your settlement check within 90 days, you will not receive any money under the settlement and you will not be bound by the release of claims described above.

**F.   TAXES**

For tax reporting purposes, any allocation payments made to Participating Plaintiffs pursuant to the Settlement shall be allocated as follows:  (a) 50% shall be subject to required withholdings and deductions by the Claims Administrator and will be reported as wage income on a Form W-2 to be issued by the Claims Administrator, and such other state or local tax reporting forms as may be required by law; and (b) 50% shall be reported as non-wage income on a Form 1099 or equivalent to be issued by the Claims Administrator, and such other state or local tax reporting forms as may be required by law.  If you have any questions regarding the tax treatment of any payments pursuant to the Settlement, you should consult your own tax advisor.  OfficeMax makes no representations as to the taxability or non-taxability of any payments pursuant to this Settlement, and nothing in this Notice should be construed as tax advice by or on behalf of OfficeMax.

**G.   ADDITIONAL INFORMATION**

This Notice only summarizes the action, the Settlement, and other related matters.  Any questions regarding this Notice or the enclosed forms can be directed to the Claims Administrator at the address and telephone number listed in Section D, above.  For more information, you may also contact Plaintiffs' Attorneys at the address and telephone number listed in Section B above.

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

DocuSign Envelope ID: BD6E6959-5E86-491F-94EF-76C0F661B242

EXHIBIT 2
CONSENT TO OPT-INTO LAWSUIT FORM

**Must Be Received by the Claims Administrator
No Later Than:**
<span style="background-color:#00ff00">      </span>**, 2015**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BRIAN DANLEY, Individually and On Behalf of All Others Similarly Situated, | Case No. 9:14-cv-81469-KAM |
| Plaintiff, | |
| v. | |
| OFFICE DEPOT, INC. and OFFICEMAX NORTH AMERICA, INC., | |
| Defendant. | |

### <u>CONSENT TO OPT INTO SETTLEMENT FORM</u>

I consent to opt into the above-referenced lawsuit for purposes of participating in settlement of the Lawsuit as described in the Notice to Putative Collective Members Regarding Settlement of FLSA Collective Action (the "Notice"). I also agree to release the Released Claims as defined in Section C.2 of the Notice, be bound by the terms of the Settlement Agreement, and to the Court's dismissal of the case with finality.

_____
Signature

_____
Name Printed

_____
Address

_____
City, State, Zip

_____
Last four digits of Social Security Number

_____
Date Signed

### <u>REQUIRED INFORMATION OR CORRECTIONS</u>

Write any name and address corrections below if any corrections are necessary OR if the distribution check should be sent to a different address, YOU MUST provide that information here:

_____

_____

_____

_____

_____

DocuSign Envelope ID: BD6E6959-5E86-4915-94EF-76C0F661B242

EXHIBIT 3
SECOND NOTICE TO PUTATIVE COLLECTIVE MEMBERS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BRIAN DANLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE DEPOT, INC. and OFFICEMAX NORTH AMERICA, INC.,<br><br>    Defendant. | Case No. 9:14-cv-81469-KAM |

### SECOND NOTICE TO PUTATIVE COLLECTIVE MEMBERS REGARDING SETTLEMENT OF FLSA COLLECTIVE ACTION

Accompanying this Second Notice is a settlement check representing the amount to which you are entitled to receive under the terms of the Settlement reached in the above-referenced collective action lawsuit. By signing and depositing or cashing (i.e., negotiating) the enclosed settlement check, you agree that you consent to opt-into the Settlement and to be bound by the terms of the Settlement, including the release described in Section C.2 of the initial Notice to Putative Collective Members Regarding Settlement of FLSA Collective Action, which is reasserted below:

Each Putative Collective Member who participates in the Settlement (either by timely submitting a Consent to Opt-Into Settlement Form or by negotiating (i.e., signing and cashing or depositing) their settlement check, agrees to fully release OfficeMax North America, Inc., Office Depot, Inc., and all affiliated parties and entities (including past and present affiliates, parents, subsidiaries, predecessors, owners, members, successors, shareholders, divisions, business areas, and each of these entities' past and present directors, officers, employees, partners, shareholders, members and representatives) (collectively "Releasees") of all federal, state and local law claims asserted in the Lawsuit and all known and unknown federal, state and local wage and hour and wage/pay-related claims – including all claims for unpaid wages, overtime, liquidated damages, penalties, and interest – that could have been asserted in the Lawsuit from the beginning of time through the [redacted]. This release is not intended to apply to claims that do not arise from protections provided by federal or state wage and hour laws, including claims under the National Labor Relations Act or claims based on additional protections provided by any collective bargaining agreement covering Putative Collective Members. This release does not apply to any claim asserted by Putative Collective Members as opt-in plaintiffs or Fed. R. Civ. P. Rule 23 putative class members in *Heitzenrater, et al. v. OfficeMax, Inc., et al.*, Case No. 1:12-cv-00900 (W.D.N.Y.).